**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **Anne Fierbaugh, on behalf of herself and all others similarly situated,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 3:24-cv-901-HEH** |
| **Capital One Services, LLC,** | |
| **Defendant.** | |

## FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff Anne Fierbaugh ("Fierbaugh" or "Plaintiff") respectfully moves for judgment against Defendant Capital One Services, LLC ( "Capital One" or "Defendant"), as follows:

### Introduction

1.      This is a claim for unpaid overtime in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., ("FLSA") and the Virginia  Overtime Wage Act, § 40.1-29.2 ("VOWA") for Capital One's failure to pay overtime premiums to individuals it employs as non-managerial Learning Associates or Senior Learning Associates ("Learning Associates"). On information and belief, Capital One employs upwards of 300 Learning Associates under the same pay plan or scheme resulting in massive wage theft and deprivation of overtime premiums to the cost of millions of dollars over the three years prior to the filing of this lawsuit.

2.      Capital One engages in a scheme which results in so-called "white collar misclassification" whereby it gives its employees a job title that makes their position sound more

1

important than it is (such as Analyst, Consultant, Process Manager, Project Manager, Content Manager, Operations Manager/Associate, or Senior Learning Associate), and which suggests that they pass one of the white collar "exemptions" to overtime laws.

3.    At Capital One, Learning Associates' work duties primarily involve meeting with subject matter experts, conducting surveys, gathering data, summarizing data, direction-following, preparing slides (called "decks"); memorizing information; presenting training classes; moderating meetings; answering questions; and participating in meetings.

4.    Learning Associates at Capital One are akin to teacher's aides. They do not write or create the curriculum, rather they provide administrative support, and can lead training sessions where they teach the curricula which is all created at the Director through Executive Vice President levels – multiple job levels above the Learning Associates.

5.    Learning Associates do not lead any line of business, are not responsible for setting business policy, nor do they manage or set any of Capital One's major business objectives.

6.    Capital One's Learning Associates are uniformly (mis)classified as "exempt" from overtime laws pursuant to Capital One's policies and pay plan.

7.    Capital One's work culture and job expectations are such that its white-collar employees are required or expected to work more than 40 hours every week (unless out on leave), meaning that Learning Associates are deprived of the overtime premiums that they are entitled to receive under federal and state laws.

8.    Plaintiff, who was employed by Capital One, brings this collective action under 29 U.S.C. § 216(b) on behalf of herself and others who are similarly situated current or former non-managerial Learning Associates seeking unpaid overtime, liquidated damages, and

attorneys' fees and costs arising out of the Defendant's FLSA violations (the "putative FLSA Collective").

9.      Plaintiff also brings claims under VOWA for failure to pay overtime on behalf of a putative class of similarly situated current or former non-managerial Learning Associates who are or have been employed in Virginia (the "Rule 23 Class").

## Jurisdiction and Venue

10.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 to hear this Complaint and to adjudicate these claims because this action is brought under the FLSA.

11.     In addition, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's supplemental state law claims, which are brought pursuant to the laws of the state of Virginia, because those claims arise out of the same transaction or occurrence as the federal claims alleged herein.

12.     Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Rule 3(B)(4) since the acts and omissions giving rise to this lawsuit have taken place in the Eastern District of Virginia.

13.     Defendant is subject to personal jurisdiction in the Commonwealth of Virginia.

## Parties

14.     Fierbaugh is a resident of Virginia who was employed by Capital One from 2012 until June 1, 2024, and for the three years prior to this lawsuit was employed as a Senior Learning Associate. Plaintiff was an "employee" for purposes of the FLSA and VOWA.

15.     Capital One Services, LLC is a limited liability company with its principal office located at 1680 Capital One Drive, McLean, Virginia 22102. Capital One has a major work location in Goochland County, Virginia within this district and division where it employs over

3

13,000 people. Capital One is an "employer" for purposes of the FLSA and VOWA.

**Factual Allegations**

16.    Fierbaugh was hired by Capital One in 2012. She worked continuously for Capital One until her termination on or about June 1, 2024.

17.    During the time frame relevant to this lawsuit, Fierbaugh worked as a Sr. Learning Associate for Capital One.

18.    Fierbaugh's "job level" or rank, within Capital One was Senior Associate.

19.    Fierbaugh worked mainly from Capital One's location in Goochland County, Virginia known as the "West Creek" campus. Fierbaugh also worked remotely from home.

20.    Fierbaugh's primary duties were clerical and administrative support in nature, including: gathering and summarizing information; collecting and summarizing data from various sources; meeting with subject matter experts; drafting slides ("decks" to use Capital one jargon); answering questions; checking checklists; memorizing information; presenting training classes; moderating meetings; participating in meetings; sending emails; and conducting surveys.

21.    Fierbaugh had no authority to set policy or business objectives.

22.    Fierbaugh had no authority to create or determine training curricula or criteria.

23.    Fierbaugh would receive the curricula and criteria from multiple internal Capital One business teams (called internal "clients"), and she would then write slides ("decks") and training materials based on the clients' directives.

24.    Fierbaugh did not supervise two or more full-time employees during the time she worked as a Sr. Learning Associate for Capital One.

25.    Capital One's work hours and expectations for Learning Associates was a 9-hour workday, Mondays through Fridays, or a 45-hour workweek.

26.     Other than during periods of sick/disability leave, vacation or holidays, Fierbaugh typically worked for Capital One for more than 50 hours each week, including time worked before and after her regular work hours, and on weekends.

27.     When she worked at West Creek, Fierbaugh's in-office work hours were typically 7:30 a.m. to 4:00 p.m., or later, Mondays through Fridays. Additionally, she performed work from home each week, both before and after her in-office work, and on weekends.

28.     When working from home, Fierbaugh typically worked from 6:30 a.m. to around 4:00 p.m., Mondays through Fridays. Additionally, she performed work in the evenings and on weekends.

29.     Fierbaugh typically worked through lunch or ate lunch while working, Mondays through Fridays.

30.     Fierbaugh had remote access to log on and perform all her Learning Associate duties from home, or from anywhere with an internet connection. Fierbaugh was able to, and did, perform such duties, including creating PowerPoint "decks" on weekends and while on vacation.

31.     Fierbaugh had a Capital One-issued cell phone which she used to access, send and receive work related emails, slack, and other communications, at all times of day and night.

32.     Fierbaugh often checked her emails, slack, and other messages late into the evenings and before going to bed each night, as well as on weekends and on vacation.

33.     Fierbaugh had a personal cell phone and Capital One employees had access to, and did, call Fierbaugh regarding work issues on her cell phone in the evenings, and sometimes on weekends, holidays or vacation.

34.     Capital One misclassified Fierbaugh as "exempt" from overtime, and unilaterally deemed her as ineligible for, and did not pay her any, overtime compensation.

35.     At no time during Plaintiff's employment did Fierbaugh meet any overtime exemption under the FLSA or VOWA.

## Common Allegations Regarding Non-Managerial Learning Associates

36.     At Capital One, the Learning Associate job title is found within the Human Resources department.

37.     Capital One's internal employee training is known as "Learning" Or "HR Learning."

38.     Learning Associates are essentially the administrative support staff within Human Resources who are tasked with supporting all of training needs for all of Capital One's divisions, departments, and lines of business.

39.     Capital One designates every employee within a hierarchy of one of fourteen "job levels" ranging from low to high as follows: Coordinator, Senior Coordinator, Principal Coordinator, Associate, Senior Associate, Principal Associate, Manager, Senior Manager, Director, Senior Director, Vice President, Managing Vice President, Senior Vice President, and Executive Vice President.

40.     Capital One's Learning Associates are primarily found within five job levels: Associate, Senior Associate, Principal Associate, Manager, and Senior Manager.

41.     As used herein, the term "non-managerial" is limited to those Learning Associates who, during any week within a three-year lookback period, did not directly supervise two or more full-time employees, *i.e.*, were not "People Managers" or "People Leaders".

42.     Capital One internally refers to its employees with supervisory responsibilities as "People Managers," or "People Leaders."

43.     Capital One internally refers to its employees without supervisory responsibilities as "Individual Contributors".

44.     Learning Associate jobs at Capital One included both non-supervisory ("Individual Contributor") and supervisory ("People Manager" or "People Leader") roles.

45.     On information and belief, employees at the Associate job level are "Individual Contributors".

46.     On information and belief, employees at the Senior Associate job level are "Individual Contributors".

47.     On information and belief, employees at the Senior Associate job level are classified by Capital One as "exempt" from overtime.

48.     On information and belief, employees at the Principal Associate job level are "Individual Contributors".

49.     On information and belief, employees at the Principal Associate job level are classified by Capital One as "exempt" from overtime.

50.     On information and belief, employees at the Manager or Senior Manager levels can be either "Individual Contributors" or "People Managers"/"People Leaders."

51.     On information and belief, employees at the Manager and Senior Manager levels who are "Individual Contributors" are classified by Capital One as "exempt" from overtime.

52.     On information and belief Capital One's internal records can identify all non-managerial Learning Associates who worked in such role within the past three years.

53.     Capital One has an HR Data Hub tool that can easily filter, and generate a report, identifying all non-managerial Learning Associates, (*i.e.*, all Learning Associates who are/were "Individual Contributors" as opposed to "People Manager" or "People Leader") within the past three years.

54.     This case is intended to cover non-managerial Learning Associates who worked

within the past three years.

55.    Non-managerial Learning Associates are rank-and-file employees with no special training or college degree required.

56.    At Capital One, every division, department, and line of business in the company which engages in training of its employees is assigned one or more HR Learning Associate(s) to provide administrative support in delivering such training.

57.    Non-managerial Learning Associates provide administrative support including: gathering, collecting, and summarizing information and data from various sources; drafting slides ("decks" to use Capital one jargon); meeting with subject matter experts; learning about the training curricula (developed by higher-ups multiple levels above them, or by internal "clients"); sending emails regarding training; moderating or leading training sessions; conducting surveys and evaluations; and summarizing survey and evaluation responses.

58.    Non-managerial Learning Associates are also asked to provide recommendations or  improvements to the format or process of the training programs  to which they are assigned, but do not have the authority to change the goals, objectives, or substance of the training programs set by their internal clients or higher-ups at Capital One.

59.    Non-managerial Learning Associates are not required, nor permitted, to exercise discretion or independent judgment involving matters of significance in carrying out their Learning Associate duties.

60.    Capital One is a very "process"-driven company reducing all lines of business to specific "processes" which lower level salaried employees like Learning Associates make sure are followed.

61.    Plaintiff and other similarly situated Learning Associates did not perform

managerial or supervisory duties over other employees, such as: interviewing or selecting employees; setting employees' schedules or hours of work; directing employees' work; appraising employee performance; handling employee complaints and grievances; or disciplining employees.

62.    Plaintiff and other similarly situated Learning Associates did not perform work directly related to the management or general business operations of Capital One or its customers.

63.    Learning Associates duties  require strict adherence to checklist-oriented functions, to assist and ensure that various Capital One HR Learning "processes" are followed, and training of employees is facilitated, in the manner desired by Capital One. Learning Associates do not originate the HR Learning process or create the HR Learning curricula, rather they implement the employee training processes as determined by higher-ups at Capital One. Learning Associate duties involve complying with, or ensuring compliance with, Capital One's "process" checklists developed by higher-ups within Capital One who oversee HR Learning (that is, employee training).

64.    Plaintiff and other similarly situated Learning Associates did not perform work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

65.    Plaintiff and other similarly situated Learning Associates:

a.    did not have the authority to formulate, affect, interpret, or implement management policies or operating practices;

b.    did not have authority to waive or deviate from established policies and procedures;

     c.    did not have authority to commit Defendant in matters that have significant financial impact;

     d.    did not have authority to negotiate and bind Defendant on significant matters; and

     e.    were not involved in determining Capital One's long- or short-term business objectives.

66.    Based on the nature of Learning Associates' job duties, there is no overtime exemption that applies to preclude them from being paid one and one-half times their regular rate of pay for all hours worked in excess of 40 per week.

67.    The duties performed by Plaintiff and other similarly situated employees, HR Learning duties were also performed by third-party contractors whose work Capital One controlled but whom Capital One paid on an hourly basis.

68.    Upon information and belief, Capital One classifies its non-managerial Learning Associate as "exempt" from receiving overtime under the FLSA and VOWA.

69.    Capital One did not require Learning Associates to keep precise track of their hours worked.

70.    Capital One does not have accurate timekeeping records of the exact hours worked by Learning Associates.

71.    Capital One has a work culture where all salaried "exempt" employees are expected to regularly work in excess of eight hours per day, and well in excess of 40 hours per week, including being available and responding to electronic messaging (emails, texts, instant messages (IM's) and the like) at all hours of the day or on weekends.

72.    Capital One issued Plaintiff and other Learning Associates iPhones and take-

home laptops so that each could perform work for Capital One's benefit remotely and at all hours.

73.    Capital One did not pay Learning Associates any overtime premium for hours each worked over 40 per week.

74.    Capital One had actual or constructive knowledge that Learning Associates were working overtime hours without being paid an overtime premium.

75.    Capital One received the benefit of the work performed by Learning Associates.

76.    Capital One is in possession of records (such as log-in records, badge swipes, emails, and instant messaging systems) which should reflect that Learning Associates were performing work for Capital One in excess of 40 hours per week.

77.    Defendant willfully or knowingly violated the FLSA and VOWA by misclassifying Plaintiff and other non-managerial Learning Associates as "exempt" in order to avoid paying overtime.

78.    At all relevant times, Defendant intended to deprive Learning Associates of the overtime pay they are entitled to under the law, or acted with reckless disregard for Plaintiff's rights under the FLSA and VOWA.

79.    On information and belief, Capital One uniformly classifies its non-managerial Learning Associates as "exempt" from overtime laws.

**Capital One's "Cross Calibrations" Confirm Similar Treatment of Learning Associates**

80.    One of Capital One's core processes is what it calls "performance management" in which it continuously tracks, compares, and evaluates all of its employees' performance.

81.    Under Capital One's "Performance Management", managers (*i.e.*, "People Leaders")  engage in the "forced rankings" or "distribution" of subordinate employees.

82.    In order to rank employees as part of the Performance Management process, twice per year, Capital One engages in a comparison of employees in a series of meetings called "Cross Calibrations".

83.    In a Capital One Performance Management Guide document describing Cross Calibrations, it states one purpose is to "Calibrate and differentiate associate performance relative to peers."

84.    Leading up to Cross Calibrations, "People Leaders" assign a proposed rating for each of their subordinate employees.

85.    Then, in the Cross Calibration meetings, "People Leaders" gather together to rank groups of subordinate employees against each other.

86.    Capital One requires "People Leaders" to rank employees to arrive at a pre-determined "distribution" or percentage, whereby Capital One executives within each line of business have pre-determined what percentage, or distribution, of employees will be ranked in each of Capital One's five performance categories from low to high.

87.    Employees who are being "calibrated" are not present in the cross calibrations.

88.    Employees are often "calibrated" within (and against) other employees who have different supervisors, perform different duties, have different objective metrics, and have different job titles. But the end goal for Capital One is to have a fixed percentage of employees within the forced distribution range as pre-determined by the executives within each line of business.

89.    Suffice it to say, Learning Associates who have different supervisors, and who "manage" different HR Learning "processes," are compared against and amongst each other as "peers" in Cross Calibrations for purposes of ranking each of their performances.

90.     Upon information and belief, sometimes employees with dissimilar job titles, but within the same "job level" are calibrated as peers (*e.g.*, Principal Associate vs. Principal Associate).

91.     The fact that Capital One groups and ranks non-managerial employees with different duties, or job titles amongst each other as "peers" confirms the uniformity of the nature of the work that all Learning Associates actually do.

92.     The fact that Capital One groups and ranks non-managerial employees within the same "job level" amongst each other as "peers" also confirms that Capital One itself views the nature of the work performed by employees such as Learning Associates as being uniformly similar.

93.     As set forth herein, the nature of the Learning Associate's work is non-exempt, task-oriented, clerical and administrative support.

94.     To the extent that Capital One may try to assert that each Learning Associate's job duties are unique and dissimilar to be joined for class action treatment, its own Cross Calibration process undercuts any such argument.

95.     Capital One treats its Learning Associates consistently and uniformly by virtue of its subjecting them to "Cross Calibrations" amongst each other during its bi-annual Performance Management cycle.

**<u>FLSA Collective Action Allegations</u>**

96.     Plaintiff files this statutorily authorized collective action pursuant to 29 U.S.C. § 216(b) as representative Plaintiff on behalf of similarly situated Learning Associates.

97.     Capital One employs, and has employed, multiple persons in the same job functions and/or positions that Plaintiff occupies, including the job functions and/or positions

that make up the job of "Learning Associate" as set forth herein.

98.    Non-managerial Learning Associates perform, and have performed, functions which entitle them to payment of overtime compensation which they have not received.

99.    Non-managerial Learning Associates have been denied overtime wages in violation of the FLSA.

100.    Capital One compensated and continues to compensate Learning Associates on a uniform compensation basis.

101.    For at least the past three years, Capital One failed to keep records of the actual amount of hours Plaintiff and similarly situated Learning Associates have worked.

102.    On information and belief, Capital One's pay, administrative, recordkeeping, and supervisory operations are centrally managed as a single enterprise, and all or most Learning Associates at Capital One are subject to common, uniform time-keeping and payroll practices.

103.    Capital One has records of the identities, exemption status, job level, and job duties of its Learning Associates and/or similarly situated employees who perform similar duties but may have different job titles, and can easily identify the scope of similarly situated putative plaintiffs.

104.    The FLSA "collective" of similarly situated employees is defined as follows:

> **Any individual who, during any week in the prior three years: (1) worked for Capital One as a "Learning Associate", (2) was classified as exempt from overtime laws, (3) worked over forty (40) hours in any week, and (4) was not a "people manager" in any such week ("Non-Managerial Learning Associates").**

105.    This claim on behalf of Learning Associates excludes any week during which a putative plaintiff supervised two or more full-time Capital One associates (*i.e.*, was a "People Leader") as part of their primary duty.

106.    If any Learning Associates did supervise two or more full-time employees, such

putative plaintiffs are not intended to be included in this action during the timeframe(s) in which s/he supervised two or more full-time employees, but are otherwise eligible to join for any timeframe(s) in the three-year lookback period in which s/he did <u>not</u> supervise two or more full-time Capital One associates.

107.    This putative FLSA Collective is nation-wide in scope as Capital One uniformly designates all Non-Managerial Learning Associates as exempt from overtime laws.

108.    Defendant's willful disregard of the overtime laws described herein entitles Plaintiff and similarly situated employees to the application of the three (3) year limitations period.

109.    The job duties of Non-Managerial Learning Associate are specifically not exempt from the coverage of the FLSA.

110.    At all relevant times, Plaintiff and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA.

111.    Plaintiff's consent to be a party plaintiff was filed on December 20, 2024 (ECF No. 1-1) and is incorporated herein by reference.

<u>**Rule 23 Class Action Allegations**</u>

112.    Plaintiff brings this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23 for the time period beginning three years prior to the commencement of this action. She sues on behalf of herself and the following "Virginia Rule 23 Class" defined as follows:

> **Any individual who, during any week since  December 20, 2021: (1) worked in Virginia for Capital One as a "Learning Associate", (2) was classified as exempt from overtime laws, (3) worked over forty (40) hours in any week, and (4) was not a "people manager" in any such week.**

113.    Plaintiff is a class representative for the Virginia Rule 23 Class.

114.    The relevant time period beginning on December 20, 2021 is three years prior to

the filing of Plaintiff's original complaint on December 20, 2024 (ECF. No. 1).

115.    On July 1, 2021, Code of Virginia § 40.1-29.2 known as the Virginia Overtime Wage Act ("VOWA (2021)") was newly enacted and went into effect for employers in Virginia, and for the first time provided employees in Virginia with a state law right of action to cover overtime premiums for all work performed in excess of 40 hours per week. A copy of VOWA (2021) was filed as Exhibit 2 to the Complaint (ECF No. 1-2).

116.    Also on July 1, 2021, the Virginia Wage Payment Act, Code of Virginia § 40.1-29 ("VWPA (2021)") was amended to include and incorporate overtime actions brought under VOWA (2021) which, *inter alia*, provided for a longer statute of limitations (3 years) and additional damages (*e.g.*, triple damages plus interest) than the FLSA. A copy of VWPA (2021) was filed as Exhibit 3 to the Complaint (ECF No. 1-3).

117.    On July 1, 2022, VOWA was amended to follow the FLSA and applicable federal regulations ("VOWA (2022)"). A copy of VOWA (2022) was filed as Exhibit 4 to the Complaint (ECF No. 1-4).

118.    Class action treatment of Plaintiff's VOWA claims are appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

119.    On information and belief, the Virginia Rule 23 Class includes over one hundred individuals, all of whom are readily ascertainable based on Defendants' business records and are so numerous that joinder of all class members is impracticable. Plaintiff estimates that approximately 200 or more individuals are putative class members for the VOWA claims.

120.    Plaintiff is a class member, and her claims are typical of the claims of other class members, and she has no interests that are antagonistic to or in conflict with the interests of other class members.

16

121.    Plaintiff and her lawyers will fairly and adequately represent the class members and their interests.

122.    Questions of law and fact are common to all class members, because, *inter alia*, this action concerns Defendant's common compensation policies, as described herein. The legality of these policies will be determined through the application of generally applicable legal principles to common facts.

123.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

### Count 1 – FLSA Overtime

**(On Behalf of Plaintiff and the Putative FLSA Collective)**

124.    The FLSA, 29 U.S.C. § 207, requires employers to pay non-exempt employees one and one-half times the regular rate of pay for all hours worked over forty (40) hours per workweek.

125.    Defendant suffered and permitted Plaintiff and the other similarly situated individuals to routinely work more than forty (40) hours in a workweek without overtime compensation.

126.    Defendant's actions, policies, and practices described above violate the FLSA's overtime requirement by regularly and repeatedly failing to compensate Plaintiff and the other similarly situated individuals their required overtime compensation.

127.    As the direct and proximate result of Defendant's unlawful conduct, Plaintiff and the other similarly situated individuals have suffered and will continue to suffer a loss of income and other damages. Plaintiff and the other similarly situated individuals are entitled to liquidated

damages and attorneys' fees and costs incurred in connection with this claim.

128.    By failing to accurately record, report, and/or preserve records of hours worked by Plaintiff and the other similarly situated individuals, Defendant has failed to make, keep, and preserve records with respect to each of these employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 29 U.S.C. § 201, *et seq*.

129.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Defendant knew or showed reckless disregard for the fact that their compensation practices were in violation of these laws.

## Count 2 – Virginia Overtime Wage Act (Code of Va. § 40.1-29.2)

### (On Behalf of Plaintiff and the Putative Rule 23 Class)

130.    Defendant is an "employer" within the meaning of VOWA.

131.    Plaintiff and those similarly situated have met the definition of "employee" within the meaning of VOWA.

132.    Plaintiff and the putative Virginia Rule 23 Class were or have been employed by Defendant in Virginia within the three years prior to the filing of this action, and have been covered employees entitled to the protections of VOWA.

133.    Defendant is not exempt from paying Plaintiff and the Virginia Rule 23 Class overtime premiums in accordance with VOWA.

134.    Within the three years prior to the filing of this action, Defendant has violated VOWA by failing to pay Plaintiff, and those similarly situated an overtime premium for all hours worked beyond 40 hours per week.

135.    Defendant knew that Plaintiff and the Rule 23 Class members were not paid overtime wages for all hours worked over 40 hours per week. Defendant knowingly or willfully

failed to pay Plaintiff and the Rule 23 Class members all overtime wages due.

136.    As the direct and proximate result of Defendant's unlawful conduct, Plaintiff and the other similarly situated individuals have suffered and will continue to suffer a loss of income and other damages. Plaintiff and the other similarly situated individuals are entitled to their unpaid overtime wages, liquidated damages, triple damages (through June 30, 2022), prejudgment interest thereon, and attorneys' fees and costs incurred in connection with this claim.

137.    Plaintiff and the Rule 23 Class seek all damages available under VOWA (2021) for all weeks worked through June 30, 2022, and all damages available under VOWA (2022) for all weeks worked from July 1, 2022 until trial.

## <u>Relief Requested</u>

Wherefore, Plaintiff on behalf of herself and the putative FLSA collective and Rule 23 Class, requests the following Relief against Defendant:

A.    Designation of this action as a collective action on behalf of Plaintiff and those similarly situated, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all those similarly situated, apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual consent forms;

B.    A finding that Plaintiff and others similarly situated are non-exempt employees entitled to protection under the FLSA and VOWA;

C.    A finding that Defendant violated the overtime provisions of the FLSA and VOWA;

D.    Judgment against Defendant in the amount of Plaintiff's and the putative FLSA Collective's and Rule 23 Class Members' unpaid back wages at the applicable overtime rates;

E.    Certification as a class action pursuant to Fed. R. Civ. P. 23 on the VOWA claims;

F.      An award of all damages, liquidated damages, triple damages, pre-judgment interest and post-judgment interest;

G.      An award of attorneys' fees and costs incurred in prosecuting this action;

H.      Leave to add additional plaintiffs and/or claims by motion, the filing of written consent forms, or any other method approved by the Court; and

I.      For such other and further relief, in law or equity, as this Court may deem appropriate and just.

Respectfully submitted,
**Anne Fierbaugh, on behalf of herself and others similarly situated**
Plaintiff

By:    _/s/Craig Juraj Curwood_
        Craig Juraj Curwood (VSB No. 43975)
        Harris D. Butler, III (VSB No. 26483)
        Zev Antell (VSB No. 74634)
        Samantha R. Galina (VSB No. 96981)
        Attorneys for Plaintiff
        Butler Curwood, PLC
        140 Virginia Street, Ste. 302
        Richmond, VA 23219
        Telephone: (804) 648-4848
        Fax: (804) 237-0413
        Email: craig@butlercurwood.com
                harris@butlercurwood.com
                zev@butlercurwood.com
                samantha@butlercurwood.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 4, 2025 I served a copy of the forgoing by e-mail on the

following:

Jason C. Schwartz, Esq.
Naima L. Farrell, Esq.
Thomas J. McCormac IV, Esq.
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036-4504
Telephone:  202.955.8500
Fax:  202.467.0539
jschwartz@gibsondunn.com
nfarrell@gibsondunn.com
tmccormac@gibsondunn.com

Sean M. Gibbons, Esq.
ROTH JACKSON
1519 Summit Avenue, Suite 102
Richmond, VA 23230
Telephone:  804.441.8442
Fax:  804.441.8438
sgibbons@rothjackson.com

Genevieve C. Bradley, Esq.
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22102
Telephone:  703.485.3531
Fax:  703.485.3525
gbradley@rothjackson.com

*Counsel for Defendant Capital One Services, LLC*

_____*/s/Craig Juraj Curwood*_____
Craig Juraj Curwood (VSB No. 43975)