IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ANNE FIERBAUGH, on behalf of herself and
all others similarly situated,

        Plaintiff,

    v.

CAPITAL ONE SERVICES, LLC,

        Defendant.

Case No. 3:24-CV-00901

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS AND/OR STRIKE

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

LEGAL STANDARD............................................................................................................ 4

ARGUMENT ........................................................................................................................ 5

    I.   The Court Should Strike Fierbaugh's Rule 23 Class Allegations. ....................................... 5

        A.  Applying Rule 23 To VOWA Claims Would Violate The Rules Enabling Act. ......... 6

            1.   VOWA's text and structure establish that the opt-in rights it provides are substantive. ..................................................................................................... 7

            2.   VOWA's opt-in mechanism functionally guarantees that representative wage suits cannot be brought absent affirmative consent................................................ 9

            3.   Comity considerations support finding that VOWA's opt-in mechanism is substantive. ................................................................................................... 11

            4.   Legislative history confirms VOWA's opt-in mechanism is substantive. .......... 12

            5.   Contrary authority from the Eastern District of Virginia warrants reconsideration.. ............................................................................................ 12

        B.  The Class Allegations Do Not Satisfy Rule 23. ........................................................ 16

    II.  The Court Should Dismiss Or Strike Fierbaugh's FLSA Collective Allegations............. 24

    III. The Court Should Dismiss Fierbaugh's Individual Claims Under Rule 12(b)(6)............. 25

    IV. The Court Should Strike Fierbaugh's Allegations Seeking Damages Beyond The Two-Year Statute Of Limitations. ........................................................................................ 27

CONCLUSION.................................................................................................................... 28

## INTRODUCTION

Former learning associate Anne Fierbaugh challenges Capital One's classification of her position as exempt from overtime.  She asks the Court to allow her to represent "upwards of 300 Learning Associates" because they share generic job duties like "gathering, collecting, and summarizing information," "sending emails," and "drafting slides," First Amended Complaint ("FAC") ¶¶ 1, 57, even though such tasks are performed by nearly all office workers, and even though learning associates support "every division, department, and line of business" that "engages in training" across the company, *id.* ¶ 56, and work for different supervisors, *id.* ¶ 89.  She proposes a nationwide opt-in collective and a Virginia opt-out class of learning associates, even though Virginia law does not authorize class actions.  And she asks the Court to award her overtime pay, even though she fails to plead basic facts about her compensation and alleged hours worked.  The Court should strike or dismiss her claims for the following reasons.

***First***, the Court should not permit Fierbaugh to bring Virginia Overtime Wage Act ("VOWA") claims in a Rule 23 class action.  Virginia law does not recognize class actions absent specific statutory authorization.  And VOWA permits an employee to bring only an ***opt-in*** collective action.  Allowing Fierbaugh to assert her VOWA claims as an ***opt-out*** class would thus violate the Rules Enabling Act because it would "abridge, enlarge or modify" the parties' substantive rights.  28 U.S.C. § 2072(b).  VOWA's text, function, comity considerations, and legislative history confirm that its opt-in scheme cannot be displaced by Rule 23.  Although this Court recently found differently in *Midkiff v. Anthem Cos.*, 748 F. Supp. 3d 376 (E.D. Va. 2024), the Court did not have the opportunity to consider numerous compelling arguments raised by Capital One here that were not briefed in *Midkiff*.  The Court is not bound by its prior decision, and Capital One respectfully asks the Court to reach a different result here in light of the additional

1

arguments presented to the Court for consideration here.

Regardless, even if Fierbaugh could assert opt-out class claims under VOWA, her claims do not satisfy the pleading requirements for a Rule 23 claim.  The fact-based and individualized nature of overtime exemptions mean Rule 23's commonality, predominance, and manageability requirements are lacking, especially here, where Fierbaugh relies on generalized allegations regarding learning associates' alleged job duties and seeks to represent employees across seniority levels who support every division, department, and line of business that engages in training throughout the company and work for different supervisors.

***Second***, for similar reasons, the Court should strike Fierbaugh's Fair Labor Standards Act ("FLSA") collective claims because learning associates who support different divisions, departments, and lines of business throughout the company are not similarly situated.  Fierbaugh's vague allegations regarding learning associates' duties—which match nearly *verbatim* many of the duties Fierbaugh's counsel identified in a separate lawsuit involving different Capital One jobs (process managers, content managers, and operations associates)—do not suffice.

***Third***, the Court should dismiss Fierbaugh's individual claims because her Complaint fails to allege basic facts such as her compensation, weeks in which she worked more than 40 hours, and approximate wages owed—all information well within her grasp.  Instead, she relies on boilerplate allegations about a "typical" work week, which do not support a plausible claim for relief, while parroting Department of Labor regulations concerning overtime exemptions.

***Finally***, the Court should strike Fierbaugh's allegations seeking to recover damages beyond the two-year statute of limitations because Fierbaugh fails to allege any facts whatsoever to support her claim that Capital One willfully violated the FLSA.

## BACKGROUND[1]

Fierbaugh worked as a senior learning associate prior to her termination on June 1, 2024. FAC ¶¶ 16-18.  She contends that Capital One misclassified her and other "non-managerial" learning associates as exempt from overtime in violation of the FLSA and VOWA.  *Id.* ¶¶ 1, 41-59.[2]

Fierbaugh claims that the "primary duties" of all learning associates involve "administrative support" tasks, "including:  gathering, collecting, and summarizing information and data from various sources; drafting slides" (i.e., "decks" or presentations); "meeting with subject matter experts; learning about the training curricula" (which she alleges were developed by others); "sending emails regarding training; moderating or leading training sessions; conducting surveys and evaluations; and summarizing survey and evaluation responses."  FAC ¶¶ 20, 57. Fierbaugh further alleges that non-managerial learning associates "do not lead any line of business," do not set "business policy," and do not "manage" any "major business objectives."  *Id.* ¶ 5.  Rather, their duties include "checklist-oriented functions" to "ensure that various Capital One HR Learning 'processes' are followed."  *Id.* ¶ 63.  Fierbaugh also conclusorily alleges that these employees do not "exercise discretion or independent judgment."  *Id.* ¶ 59.  However, Fierbaugh concedes that learning associates are responsible for "provid[ing] recommendations or improvements to the format or process of the training programs."  *Id.* ¶ 58.  And she alleges that learning associates "are tasked with supporting all of [the] training needs for all of Capital One's divisions, departments, and lines of business."  *Id.* ¶ 38.

---

[1] Capital One accepts as true the allegations in the FAC only for purposes of this motion.

[2] Fierbaugh defines "non-managerial" to mean individuals who "did not directly supervise two or more full-time employees."  FAC ¶ 41.  She admits that some learning associates did supervise other employees, *id.* ¶ 44, and therefore would not be included in the class, *id.* ¶¶ 41, 59.

Fierbaugh alleges that Capital One has a "work culture" in which salaried employees are expected to work more than eight hours per day and more than 40 hours per week. FAC ¶ 71. Although she contends that "Capital One did not require Learning Associates to keep precise track of their hours worked," *id.* ¶ 69, and "does not have accurate timekeeping records of the[ir] exact hours worked," *id.* ¶ 70, she claims Capital One has records that "should reflect that Learning Associates were performing work . . . in excess of 40 hours per week," *id.* ¶ 76. Fierbaugh says she "typically worked … for more than 50 hours each week." *Id.* ¶ 26. She claims Capital One did not pay her overtime, *id.* ¶ 34, though she conspicuously does not allege the amount of compensation that she received.

Fierbaugh seeks to represent a nationwide collective and a Virginia class of all non-managerial learning associates at various seniority levels, FAC ¶¶ 104, 112, who support "every division, department, and line of business" across the entire company, *id.* ¶ 56—as many as 300 individuals, *id.* ¶ 1, and work for different supervisors, *id.* ¶ 89. Despite the apparent breadth of the learning associate role, Fierbaugh claims Capital One "views the nature of the work" that learning associates perform as "uniformly similar," *id.* ¶ 92, because its "Cross Calibrations" performance review process purportedly compares employees "within each line of business" who "have different supervisors, perform different duties, have different objective metrics, and have different job titles." *id.* ¶¶ 85, 88.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[N]aked assertions devoid of . . . factual enhancement" do not suffice, nor do "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements." *Id.* (cleaned up). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," and dismissal is warranted. *Id.* (cleaned up).

Courts likewise grant pre-discovery motions to strike class actions under Rules 12(f) and 23(d)(1)(D) when "it is clear from the face of the complaint that the plaintiff cannot and could not meet Rule 23's requirements for certification because the plaintiff has failed to properly allege facts sufficient to make out a class or could establish no facts to make out a class." *Bigelow v. Syneos Health, LLC*, No. 5:20-CV-28-D, 2020 WL 5078770, at *4 (E.D.N.C. Aug. 27, 2020); *cf. Knapp v. Zoetis Inc.*, No. 3:20-CV-191-MHL, 2021 WL 1225970, at *10 (E.D. Va. Mar. 31, 2021) (granting motion to strike class claims); *see also Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023); *Melendez v. G4S Secure Sols. (USA) Inc.*, No. 1:20-CV-24213-DLG, 2020 WL 10140956, at *2 (S.D. Fla. Dec. 11, 2020) (dismissing FLSA collective claim on same grounds).

## ARGUMENT

### I. THE COURT SHOULD STRIKE FIERBAUGH'S RULE 23 CLASS ALLEGATIONS.

The Court should strike Fierbaugh's Rule 23 class allegations under Rules 12(f) and 23(d)(1)(D) for two reasons: ***First***, VOWA does not authorize ***opt-out*** class claims but instead requires Fierbaugh to use a collective action ***opt-in*** process. Fierbaugh's attempt to circumvent this requirement would "abridge, enlarge or modify" the parties' substantive rights in violation of the Rules Enabling Act, 28 U.S.C. § 2072(b), and would be contrary to the Virginia Legislature's clear intent that collective-action rights under VOWA mirror collective-action rights under the FLSA. Although this Court recently permitted VOWA claims to proceed as an opt-out class in *Midkiff*, it did so without the benefit of comprehensive briefing on the arguments raised herein, and Capital One respectfully requests that it reconsider its decision. ***Second***, Fierbaugh fails to plead facts to satisfy Rule 23's requirements: her proposed class cannot satisfy commonality,

5

predominance, and manageability requirements, and it is also improperly fail-safe—meaning, class membership in this case improperly depends on whether a person has a valid misclassification claim in the first instance.

### A.  Applying Rule 23 To VOWA Claims Would Violate The Rules Enabling Act.

Under the Rules Enabling Act, federal rules apply in federal suits and displace conflicting state law provisions so long as the federal rule does not "abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072(b).  When there is a potential conflict with a state rule, a court must determine which law "govern[s] [the] question."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 421-22 (2010) (Stevens, J., concurring).[3]

Here, there is no dispute that Rule 23 and VOWA conflict:  If Rule 23 is satisfied, all individuals who meet the class definition are made part of the class by operation of law unless they *opt out* by "request[ing] exclusion."  Fed. R. Civ. P. 23(c)(2)(B)(v).  "Virginia jurisprudence," by contrast, "does not recognize class actions" absent specific statutory authorization.  *Casey v. Merck & Co.*, 722 S.E.2d 842, 846 (Va. 2012).  VOWA does not provide this authorization; instead, it permits employees to bring only an *opt-in* collective action "on behalf of similarly situated employees . . . consistent with the collective action procedures of the [FLSA], 29 U.S.C. § 216(b)."  Va. Code § 40.1-29(J).[4]

---

[3] Justice Stevens's approach controls because he concurred in the judgment on the narrowest grounds.  *See Marks v. United States*, 430 U.S. 188, 193 (1977); *see also Albright v. Christensen*, 24 F.4th 1039, 1044 (6th Cir. 2022) (Justice Stevens's concurrence is "controlling").

[4] Virginia Code § 40.1-29(J), which was enacted as an amendment to the Virginia Wage Payment Act ("VWPA") in 2020, is expressly incorporated into VOWA.  *See* Va. Code. § 40.1-29.2 ("Any employer that violates the overtime pay requirements of the federal Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*, as amended, and any regulations, guidance, or rules adopted pursuant to the overtime pay provisions of such federal act or any related governing case law shall be liable to the employee for the applicable remedies, damages, or other relief available under the federal Fair Labor Standards Act *in an action brought pursuant to the process in subsection J of § 40.1-29*." (emphasis added)).

Because there is a conflict, the Court must consider whether applying Rule 23 "would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Shady Grove*, 559 U.S. at 423-24 (Stevens, J., concurring). The test is not whether the "opt-in provision takes the *form* of substance or procedure," *Hine v. OhioHealth Corp.*, 680 F. Supp. 3d 861, 867-68 (S.D. Ohio 2023), but whether it "actually is part of a State's framework of substantive rights or remedies," *Shady Grove*, 559 U.S. at 419 (Stevens, J., concurring). Because VOWA's opt-in mechanism is inextricably intertwined with the substantive rights VOWA confers, it controls.

To be sure, some judges in the Eastern District of Virginia, including this Court, have allowed plaintiffs to assert VOWA claims as Rule 23 opt-out classes. Capital One respectfully submits that this Court should reconsider its decision here. As detailed below, Capital One submits that the first judge within this district to consider the issue misapplied Justice Stevens's controlling concurrence in *Shady Grove*. *See infra* I.A.5 (discussing *Glennon v. Anheuser-Busch, Inc.*, No. 4:21-CV-141-AWA-DEM, 2022 WL 18937383 (E.D. Va. Sept. 22, 2022)). This Court later followed *Glennon*'s analysis, *see Midkiff*, 748 F. Supp. 3d at 387-88, but it did not have the benefit of considering all the arguments Capital One presents herein. *See infra* I.A.5. After considering VOWA's statutory text, function, comity considerations, and legislative history, as required by Justice Stevens's controlling *Shady Grove* analysis, the Court should conclude that applying Rule 23 would "abridge, enlarge or modify" substantive rights provided in VOWA.

### 1. VOWA's text and structure establish that the opt-in rights it provides are substantive.

VOWA's opt-in mechanism (1) is embedded in the same sentence that provides a cause of action to recover wages, and (2) applies only to Virginia law wage claims. *See* Va. Code 40.1-29.2 (incorporating Va. Code § 40.1-29(J)). Since *Shady Grove*, courts have recognized these

7

characteristics as hallmarks of substantive rights.

**_First_**, VOWA's "opt-in provision 'is not contained in a generally applicable procedural rule but, rather, in the same paragraph of the same statute that creates the underlying substantive right.'" _Driscoll v. George Washington Univ._, 42 F. Supp. 3d 52, 62 (D.D.C. 2012) (finding similar D.C. wage law opt-in mechanism was substantive and not displaced by Rule 23). This drafting choice "militates in favor of finding it substantive." _Garner v. Cleveland Clinic Found._, 735 F. Supp. 3d 867, 873, 877 (N.D. Ohio 2024) (finding similar Ohio wage law's "opt-in provision is substantive" under Justice Stevens's "controlling" _Shady Grove_ analysis).

Courts frequently conclude that a provision is substantive when—as here—it is found "in the same paragraph of the same statute that create[d] the underlying substantive right." _In re Digit. Music Antitrust Litig._, 812 F. Supp. 2d 390, 416 (S.D.N.Y. 2011) (applying Illinois class-action limitation contained in Illinois Antitrust Act over Rule 23); _Davenport v. Charter Commc'ns, LLC_, 35 F. Supp. 3d 1040 (E.D. Mo. 2014) (collecting cases). Courts have rejected as "unpersuasive" assertions that location is irrelevant. _Fejzulai v. Sam's W., Inc._, 205 F. Supp. 3d 723, 729 (D.S.C. 2016) ("it would be an irresponsible reading of the statute not to account for [South Carolina statute's] class prohibition as shaping the scope of the right conveyed").

**_Second_**, VOWA's opt-in procedure applies only to claims brought under Virginia wage laws. _See_ Va. Code 40.1-29.2 (incorporating Va. Code § 40.1-29(J)). "This limited applicability suggests that" VOWA "is intended to solely impact the rights and remedies available under [VOWA's] overtime provision." _Collins v. Greater Cincinnati Behav. Health Servs._, No. 1:23-CV-578, 2024 WL 149292, at *4 (S.D. Ohio Jan. 12, 2024) (Ohio opt-in wage statute applied over Rule 23); _see also Harris v. Reliable Reps. Inc._, No. 1:13-CV-210-JVB, 2014 WL 931070, at *6-8 (N.D. Ind. Mar. 10, 2014) (same under Indiana and Ohio overtime statutes).

## 2. VOWA's opt-in mechanism functionally guarantees that representative wage suits cannot be brought absent affirmative consent.

The function of VOWA's opt-in mechanism confirms it is substantive: It guarantees to both employees and employers that representative wage suits cannot be brought absent affirmative consent from all parties, and, in so doing, preserves traditional statute of limitations tolling rules.

*First*, VOWA's opt-in scheme confers substantive rights on employees by confirming that their claims can be litigated only where they have affirmed their intent to be bound by the court's judgment. It likewise confers substantive rights on employers not to be sued in representative actions absent each plaintiff-employee's consent. *Cf. Henderson v. United States*, 517 U.S. 654, 671 (1996) ("who may sue, on what claims, for what relief, within what limitations period" are "substantive matters" (footnotes omitted)). If Fierbaugh was allowed to assert VOWA claims in an opt-out class, she would "eschew other employees' rights to affirmatively cho[o]se whether to join the lawsuit," *Hine*, 680 F. Supp. 3d at 870 n.11, while destroying Capital One's right not to be sued by its employees who have not affirmed their intent to be bound by the Court's judgment.

These rights are important, and thus courts have long recognized fundamental differences between members of a Rule 23 opt-out class and individuals who affirmatively opt in to a collective. Unlike a Rule 23 class member, "every FLSA opt-in plaintiff has independent status as a co-party with [the lead plaintiff]," *Collins v. DKL Ventures, LLC*, No. 1:16-CV-70, 2017 WL 11569553, at *2 (D. Colo. July 19, 2017), and "hold[s] the same relationship to the case as does the named plaintiff," *Borup v. CJS Sols. Grp., LLC*, 333 F.R.D. 142, 148 (D. Minn. 2019). "In an FLSA 'collective action' every named and 'opt-in' plaintiff pursues his or her individual claim," and thus the collective action "acts much like a civil suit with many plaintiffs who pursue their own claims"—those opt-in plaintiffs "may settle on different terms or some may settle and others go to trial." *Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1113-14 (D.

Colo. 2017); 7B Wright & Miller, *Fed. Prac. & Proc.* § 1807 (3d ed. 2010) ("each FLSA claimant has the right to be present in court to advance his or her own claim"). VOWA, by incorporating the FLSA's opt-in provisions, confers the same party status and rights on those who opt-in to the suit.

Consistent with this understanding, district courts have found that similar state law opt-in provisions confer substantive rights. *See Driscoll*, 42 F. Supp. 3d at 61-62 (similar D.C. wage law "confers substantive rights" because "it provides that employees' claims can only be litigated where the employees have affirmed their intent to be bound, and it establishes that employers have a right not to be sued in representative actions absent each plaintiff employee's consent"); *see also Garner*, 735 F. Supp. 3d at 878 (similar Ohio wage law "contain[s] substantive rights as to how early in the litigation a plaintiff actively participates and how a defendant defends a suit").

***Second***, VOWA preserves traditional statute of limitations rules for party plaintiffs. Justice Stevens identified state statutes of limitations as a type of state rule that although "one might describe as 'procedural'" "nonetheless define[s] substantive rights." *Shady Grove*, 559 U.S. at 424 n.8 (Stevens, J., concurring). If Fierbaugh were allowed to bring her VOWA claims under Rule 23, this would expand the limitations period that would otherwise apply under state law because tolling rules differ greatly between Rule 23 opt-out classes and opt-in collectives: "Unlike the statute of limitations for a Rule 23 class action—which the filing of the complaint tolls—the statute of limitations for a FLSA collective action claim continues to run for a potential claimant until he or she consents in writing to become a party plaintiff." *McNeil v. Faneuil, Inc.*, No. 4:15-CV-81-HCM-RJK, 2016 WL 11673834, at *2 (E.D. Va. Apr. 13, 2016) (cleaned up). The same tolling principles apply to VOWA's opt-in scheme. *See* Va. Code § 40.1-29.2. If the Court allows Fierbaugh to bring VOWA claims under Rule 23, it will expand the statute of limitations available

to absent class members because the effect of recognizing a Rule 23 opt-out class would be to toll the limitations period that otherwise would continue to run under state law. Because this would "alter[] the State's 'substantive rights,'" it violates the Rules Enabling Act. *Shady Grove*, 559 U.S. at 424 n.8 (Stevens, J., concurring).

### 3. Comity considerations support finding that VOWA's opt-in mechanism is substantive.

Comity considerations support the conclusion that VOWA's opt-in mechanism confers substantive rights that cannot be displaced by Rule 23. In *Shady Grove*, Justice Stevens cautioned that "federal rules must be interpreted with some degree of 'sensitivity to important state interests and regulatory policies.'" 559 U.S. at 418 (Stevens, J., concurring). Also relevant is "the degree to which the [federal] Rule makes the character and result of the federal litigation stray from the course it would follow in state courts." *Id.* at 419.

Here, Fierbaugh seeks to apply federal Rule 23 to her state wage and hour claims—even though she is prohibited from applying federal Rule 23 to her federal FLSA claims and even though Virginia law prohibits opt-out class actions and VOWA authorizes only opt-in collectives. That perverse outcome would not merely cause the litigation to "stray from the course it would follow in [Virginia] state courts," but would abandon the path altogether. *Shady Grove*, 559 U.S. at 419 (Stevens, J., concurring). This "absurd[]" result "counsels in favor of finding the opt-in mechanism substantive under this Rules Enabling Act analysis." *Hine*, 680 F. Supp. 3d at 870 (finding that similar Ohio statute could not be displaced by Rule 23 and observing that it would be "quite odd that the same plaintiff would be prohibited from applying Federal Rule 23 to her own *federal wage* and hour claim, and yet may apply Federal Rule 23 to her *state* wage and hour claims—in contravention of state law"). At bottom, "[w]hen a State"—as Virginia has done in enacting VOWA's opt-in mechanism—"chooses to use a traditionally procedural vehicle as a

11

means of defining the scope of substantive rights or remedies, federal courts must recognize and respect that choice." *Shady Grove*, 559 U.S. at 420 (Stevens, J., concurring).

### 4. Legislative history confirms VOWA's opt-in mechanism is substantive.

VOWA's legislative history also underscores that its opt-in mechanism confers substantive rights. Before VWPA's amendment in 2020, "employees who were allegedly denied wages had no private recourse in suit" under Virginia law, "but instead were required to file an administrative claim with the Virginia Department of Labor and Industry." D. Paul Holdsworth, *Employment Law*, 55 U. Rich. L. Rev. 113, 139-40 (2020). VWPA changed this by creating a private right of action for employees to sue for unpaid wages: Va. Code § 40.1-29(J). VOWA, which was enacted a year later and expressly incorporates VWPA's opt-in provision, *see infra* n.4, was intended to create a state copy-cat remedy of the FLSA by adopting that law wholesale. In Virginia Senate testimony, VOWA's chief sponsor stressed that it "allows for individuals to be able to take a lawsuit in state court for the loss of overtime wages in *the same way that they would be able to do in federal court*." Va. S. Com. & Lab. Comm. (Feb. 22, 2021) (testimony of Del. Mike Mullin), at 19:22-21:16, https://tinyurl.com/bdz5decf (emphasis added). It was intended to "mirror[] what we already have in federal court" and "keep[] us in line with federal law." *Id.*

Virginia thus sought to adopt the FLSA in its entirety, including its requirement that litigants may only proceed with an opt-in collective action. A contrary interpretation would directly conflict with VOWA's sponsor's testimony that the law "does not expand itself beyond what federal law [i.e., the FLSA] already requires." Va. S. Fin. & Appropriations Comm. (Feb. 22, 2021) (testimony of Del. Mike Mullin), at 47:07-49:03, https://tinyurl.com/4pm7m8md.

### 5. Contrary authority from the Eastern District of Virginia warrants reconsideration.

Fierbaugh is likely to rely on three decisions from the Eastern District of Virginia,

including from this Court, that have permitted plaintiffs to assert VOWA claims as Rule 23 opt-out classes.  Capital One respectfully submits that this Court should reconsider its prior decision and not follow those non-binding decisions for the reasons detailed below.

      **a.**  The first court in this district to address the issue was *Glennon v. Anheuser-Busch, Inc.*, No. 4:21-CV-141-AWA-DEM, 2022 WL 18937383 (E.D. Va. Sept. 22, 2022).  Despite acknowledging that Justice Stevens's opinion "controls," *id.* at *3 n.6, *Glennon* relied heavily on Justice Scalia's non-binding plurality decision as the basis of its analysis and conclusion that the opt-in mechanism was procedural, *see, e.g.*, *id.* at *4 (quoting Justice Scalia for proposition that "divergence from state law" is "inevitable"); *id.* (quoting Justice Scalia for proposition that "aggregate liability . . . does not depend on whether the suit proceeds as a class action"); *id.* (quoting Justice Scalia for proposition that "[w]hile 'it is undoubtedly true' that some potential plaintiffs who would not have filed individual suits will join a class action, this fact 'has no bearing on Defendant's or the plaintiffs' legal rights'" (cleaned up)).  Because none of these statements carried a majority (nor were endorsed by Justice Stevens), they offer little help in resolving whether Rule 23 can override VOWA's opt-in mechanism.  Rather, they indicate the *Glennon* court largely applied Justice Scalia's plurality rather than Justice Stevens's controlling concurrence.

      *Glennon* also discounted the significant differences between VOWA and the state statute at issue in *Shady Grove*.  *See* 2022 WL 18937383, at *4 ("Wherever located [in the statute], the opt-in requirement simply is not part of Virginia's framework of *substantive* rights and remedies").  And the court did not consider fundamental differences in rights between opt-in plaintiffs and Rule 23 class members, or Rule 23's impact on the statute of limitations of claims brought under VOWA.  *See supra* I.A.2.

      Finally, *Glennon* relied on decisions involving distinguishable state laws.  For example,

*Roberts v. C.R. England, Inc.*, 321 F. Supp. 3d 1251 (D. Utah 2018), concerned a broad Utah Consumer Sales Practices Act that was more akin to the New York statute in *Shady Grove* than VOWA.  *See Glennon*, 2022 WL 18937383, at *4 (citing *Roberts*, 321 F. Supp. 3d at 1257).  Like the New York statute, it was "not clear whether the opt-in provision" in the Utah law "applie[d] only to claims under the [Utah consumer protection law] or extend[ed] more broadly to all related claims regardless of their source of law."  *Roberts*, 321 F. Supp. 3d at 1258.  But as detailed above, there is no doubt here that VOWA's opt-in provision applies to Virginia wage laws and not more generally.  *See supra* I.A.1.  *Glennon* also cites *Gandy v. RWLS, LLC*, 308 F. Supp. 3d 1220 (D.N.M. 2018).  But the wage law at issue there contained no "express opt-in requirement" like VOWA does here, *id.* at 1228, which was key to the *Gandy* court's reasoning:  "The fact that an opt-in requirement is not explicitly set forth in the [New Mexico wage law] undermines the argument that legislators intended to define the scope of [the state law's] substantive right through the opt-in procedural vehicle."  *Id.* at 1229.

**b.**  The second decision to have considered this question offers only brief analysis while largely pointing back to *Glennon* itself.  *See Hatcher v. Cnty. of Hanover*, No. 3:23-CV-325-MHL, 2024 WL 3357839, at *2-3 (E.D. Va. July 10, 2024).  Indeed, *Hatcher*'s analysis is limited to a single paragraph.  *See id.* at *3.  And it cites a decision that also relied on *Glennon*.  *Id.* (citing *Heppard v. Dunham's Athleisure Corp.*, 705 F. Supp. 3d 833, 839 (E.D. Mich. 2023)).[5]

---

[5] *Hatcher* also errs by relying on the Third Circuit's inapposite decision in *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 264-65 (3d Cir. 2012).  *Knepper* considered whether an FLSA opt-in collective action can be maintained alongside a Rule 23 opt-out class action in federal court.  That is a fundamentally different question than is at issue here.  *See Driscoll*, 42 F. Supp. 3d at 60 (noting that "[m]any courts have considered whether a FLSA opt-in collective action can be brought alongside an opt-out class action under state law and Rule 23, where the relevant state laws have no specific class- or collective-action provisions" while observing that that issue is different than "whether Rule 23 allows a plaintiff to bring an opt-out class action under a state law provision that mandates a more restrictive opt-in collective action").

**c.** This Court's prior decision in *Midkiff v. Anthem Cos.*, 748 F. Supp. 3d 376 (E.D. Va. 2024), considered the *Shady Grove* question in the context of a motion for class certification in which the defendants failed to brief many of the arguments presented here. Specifically, this Court did not have the benefit of comprehensive briefing on: (1) Virginia law's general prohibition against class actions absent specific statutory authorization; (2) the fundamental differences in rights between opt-in plaintiffs and Rule 23 class members; (3) Rule 23's impact on the statute of limitations of claims brought under VOWA; and (4) the importance of comity principles to the analysis. *See* Defs.' Resp. to Pls.' Mot. for Rule 23 Class Certification at 4-9, *Midkiff v. Anthem Cos.*, No. 3:22-CV-417-HEH (Dec. 31, 2023) (Dkt. 121). The *Midkiff* defendants also directed this Court to only a handful of cases supporting their position; Capital One has marshaled significant authority in support of its position. And while the defendants in *Midkiff* invoked legislative history, they did not direct this Court to the specific sources Capital One presents here—including testimony from VOWA's chief sponsor stressing the legislature's intent to "keep[] [Virginia] in line with federal law." Va. S. Com. & Lab. Comm. (Feb. 22, 2021) (testimony of Del. Mike Mullin), at 19:22-21:16, https://tinyurl.com/bdz5decf.

As this Court is aware, "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). As such, Capital One respectfully requests that this Court reconsider its prior holding in *Midkiff*.

*          *          *

In contrast with these prior Eastern District of Virginia decisions, when faced with *nearly identical* state law opt-in statutory schemes, district courts across the country have refused to apply Rule 23, concluding that doing so would "abridge, enlarge or modify" the state substantive rights

15

reflected in the opt-in provision in violation of the Rules Enabling Act. *See Garner*, 735 F. Supp. 3d at 873-78; *Collins*, 2024 WL 149292, at *4-5; *Harris*, 2014 WL 931070, at *6-8; *Driscoll*, 42 F. Supp. 3d at 60-62. Other courts have reached the same result in cases involving similar state laws that barred representative actions for wage claims. *See Williams v. King Bee Delivery, LLC*, 199 F. Supp. 3d 1175, 1183-86 (E.D. Ky. 2016); *Davenport*, 35 F. Supp. 3d at 1049-51. The Court should do the same here and strike Fierbaugh's proposed Rule 23 class.[6]

### B. The Class Allegations Do Not Satisfy Rule 23.

Even if Fierbaugh could bring Rule 23 class claims under VOWA, her claims should be stricken because she has not plausibly alleged that the putative class of learning associates satisfies Rule 23's commonality, predominance, and manageability requirements, and her class definition is also improperly fail-safe.

**1.** ***Commonality.*** Fierbaugh's claims on behalf of learning associates turn on the specific duties of individual employees, the adjudication of which would "overwhelm questions common to the class." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). A class may be maintained only where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). What matters "is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (cleaned up).

Fierbaugh does not plead facts to explain how her claims share common questions (and

---

[6] Once a court concludes that a federal rule is inapplicable or invalid, it must "wade into *Erie*'s murky waters." *Shady Grove*, 559 U.S. at 398. Here, that analysis is not murky. *Erie*'s "twin aims" are "discouragement of forum-shopping and avoidance of inequitable administration of the laws," *Hanna v. Plumer*, 380 U.S. 460, 468 (1965), and both counsel in favor of applying the state rule. Were Rule 23 to apply, plaintiffs could avoid VOWA's opt-in requirements by bringing a Virginia state law claim in federal court. *See Hine*, 680 F. Supp. 3d at 871.

answers) with those of the hundreds of class members she seeks to represent—many of whom worked at different seniority levels and supported different divisions, departments, and lines of business.  FAC ¶¶ 38, 40.  The FAC says only that questions of law and fact are common to the class because the case concerns "common compensation policies"—i.e., the alleged failure to pay overtime.  *Id.* ¶ 122.  But that is a legal question that "any competently crafted class complaint" would raise and is "not sufficient" to justify class certification post-*Dukes*.  564 U.S. at 349 (cleaned up) (questions like "Is that an unlawful employment practice?  What remedies should we get?" cannot establish commonality).  As detailed below, assessing whether Capital One failed to pay any learning associate overtime requires assessing whether the individual was exempt from overtime, which would entail an individualized analysis of their job duties.  *See infra* I.B.2.

2. ***Predominance.***  The predominance inquiry is "more demanding" than the commonality requirement, *EQT Prod. Co. v. Adair*, 764 F.3d 347, 365 (4th Cir. 2014), and "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues," *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up).  Here, individualized issues will predominate when assessing whether learning associates meet overtime exemptions.

The chief allegation in support of class treatment—that Capital One uniformly classified putative class members as exempt, FAC ¶ 6—does not establish predominance.[7]  "Allegations of generalized policies are not usually sufficient for the purposes of class certification."  *Stafford v. Bojangles' Rests., Inc.*, 123 F.4th 671, 680 (4th Cir. 2024).  The Fourth Circuit is "skeptical, for instance, when plaintiffs or district courts rely on nebulous references to 'systemic failures' or

---

[7] Fierbaugh also argues that Capital One's cross-calibration review process supports her class allegations.  FAC ¶¶ 85, 88.  But those arguments fail for the reasons detailed below.  *See infra* Part II.

'systemic deficiencies' to satisfy commonality." *Id.*; *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009) (defendant's "uniform exemption policy says little about the main concern in the predominance inquiry:  the balance between individual and common issues"); *Dailey v. Groupon*, *Inc.*, No. 1:11-CV-05685, 2014 WL 4379232, at *5 (N.D. Ill. Aug. 27, 2014) ("[I]t is an abuse of the district court's discretion 'to rely on [uniform exemption] policies to the near exclusion of other relevant factors touching on predominance.'"). Indeed, "the fact of common exemption does not establish whether all plaintiffs were *actually* entitled to overtime pay or whether they were covered by the applicable administrative regulations defining FLSA's exemptions." *Myers v. Hertz Corp.*, 624 F.3d 537, 549-50 (2d Cir. 2010).  While federal courts sometimes permit "class actions as vehicles to determine whether a class of employees is misclassified as exempt under state and federal law," in those cases, "plaintiffs generally have alleged facts regarding (a) company-wide policies governing how employees spend their time, or (b) uniformity in work duties and experiences that diminish the need for individualized inquiry." *Vinole v. Countrywide Home Loans, Inc.*, 246 F.R.D. 637, 640 (S.D. Cal. 2007), *aff'd*, 571 F.3d 935 (9th Cir. 2009).

Fierbaugh has alleged no specific company-wide policy here and, rather than allege uniformity in job duties, the Complaint's allegations are generic and vague and could describe duties performed by nearly all office workers.  *See, e.g.*, FAC ¶¶ 20, 57 (alleging learning associates duties include "checking checklists," "memorizing information," "sending emails," "drafting slides," and "gathering, collecting, and summarizing information and data from various sources").  Indeed, Fierbaugh's allegations closely mirror the duties alleged in a separate complaint against Capital One brought by Fierbaugh's counsel involving process managers, content managers, and operations associates.  *See Mullin v. Capital One Servs., LLC*, No. 3:24-cv-816-

MHL (E.D. Va. Jan. 31, 2025) ("Mullin FAC").  Of the vague functions alleged by Fierbaugh, five appear **verbatim** in Mullin's complaint.  *Compare* FAC ¶ 20, *with* Mullin FAC ¶ 28 (listing in both complaints "gathering and summarizing information"; "collecting and summarizing data from various sources"; "checking checklists"; "drafting slides"; and "answering questions").

And Fierbaugh's remaining allegations about learning associate duties are simply "a formulaic recitation of the elements of" the overtime exemption requirements which should not be credited and do nothing to resolve the complaint's predominance problems.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To take a few examples:

| Fierbaugh's Complaint | Code of Federal Regulations |
|---|---|
| "Non-managerial Learning Associates are not required, nor permitted, to exercise discretion or independent judgment involving matters of significance in carrying out their Learning Associate duties."  FAC ¶ 59. | "To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a). |
| "Plaintiff and other similarly situated Learning Associates did not perform work directly related to the management or general business operations of Capital One or its customers." FAC ¶ 62. | "The term 'employee employed in a bona fide administrative capacity' in section 13(a)(1) of the Act shall mean any employee . . . Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a). |
| "Plaintiff and other similarly situated Learning Associates did not perform work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." FAC ¶ 64. | "The term 'employee employed in a bona fide professional capacity' in section 13(a)(1) of the Act shall mean any employee . . . Whose primary duty is the performance of work . . . [r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.300(a). |

Allegations of "broad guidelines for [putative] class members' general duties . . . do not demonstrate the exemption issue is capable of class-wide proof."  *Braun v. Safeco Ins. Co. of Am.*,

No. 2:13-CV-00607-BRO-JC, 2014 WL 9883831, at *12 (C.D. Cal. Nov. 7, 2014); *see also Stafford*, 123 F.4th at 680.  Where employees' "work experiences are not completely uniform, whether they are primarily engaged in exempt duties cannot be answered with common proof," *Zackaria v. Wal-Mart Stores, Inc.*, No. 5:12-CV-01520-FMO-SP, 2015 WL 2412103, at *15 (C.D. Cal. May 18, 2015), because an employee's exemption status "depends 'on all the facts in a particular case' and demands an examination of 'the character of the employee's job as a whole,'" *Levine v. Vitamin Cottage Nat. Food Mkts., Inc.*, No. 20-CV-00261-STV, 2023 WL 3648684, at *9 (D. Colo. May 25, 2023).  The exemption assessment is an "extremely individual and fact-intensive" inquiry that requires "a detailed analysis of the time spent performing administrative duties and a careful factual analysis of the full range of the employee's job duties and responsibilities." *Diaz v. Elecs. Boutique of Am., Inc.*, No. 1:04-CV-00840, 2005 WL 2654270, at *2 (W.D.N.Y. Oct. 17, 2005) (cleaned up); *see also In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.*, No. 11-CV-3121-WJM, 2016 WL 1407743, at *5 (D.N.J. Apr. 11, 2016) (collecting cases and holding that predominance not satisfied).  Review of just two potentially relevant exemptions makes this clear:

a. ***Administrative exemption.***  This exception requires that employees:  (1) earn a salary exceeding a certain threshold; (2) have as a "primary duty" "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) have a "primary duty [that] includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).  To determine whether the exemption applies requires assessing whether learning associates in different seniority levels, supporting different divisions, departments, and lines of business shared "common *primary* duties" that were exempt or non-exempt functions.  *Dailey*, 2014 WL 4379232,

at *6 ("[E]ven if two Account Reps perform the same limited set of duties, one Account Rep's primary duty may place her in the exempt category, while the other Account Rep's primary duty may place her in the non-exempt category. Evaluating these individualized variations in how Account Reps primarily spend their time would therefore predominate over the common question of whether cold-calling as a duty was a sales duty or an administrative duty."). And whether these employees operate with "discretion and independent judgment" must be assessed "in the light of all the facts involved in the particular employment situation in which the question arises." 29 C.F.R. § 541.202(b).

Fierbaugh does not plead facts indicating that she will be able to show common primary duties for all learning associates. She does not plausibly allege that all learning associates share the same duties, as her duties allegations are generic and vague, *see, e.g.*, FAC ¶¶ 20, 57, and she concedes that learning associates support business units across the company, *id.* ¶ 56.

Nor has Fierbaugh alleged facts that would allow the Court to plausibly conclude that the extent to which learning associates exercise "discretion and independent judgment" will be uniform across the class. As a result, an evaluation of whether learning associates are exempt administrative employees will necessarily devolve into an individualized inquiry.

**b.** ***Highly Compensated Employee Exception.*** This exemption applies to employees who: (1) are compensated above a certain threshold; (2) have a primary duty of performing office or non-manual work; and (3) "customarily and regularly perform[] any one or more of the exempt duties or responsibilities of an executive, administrative, or professional employee." 29 C.F.R. § 541.601(a). Fierbaugh alleges no facts regarding the salaries earned by any learning associates. Accordingly, some (or all) learning associates at Capital One may have salaries that exceed the regulatory requirement. *See id.* Determining each employee's salary will necessarily be an

individualized endeavor. And for all employees whose salaries meet the threshold, individual questions will abound in determining whether they perform one of the duties of an executive, administrative, or professional employee. *See id.*

**3. *Manageability.*** For similar reasons, the proposed class of learning associates would create "difficulties in managing a class action," Fed. R. Civ. P. 23(b)(3)(D), both because it will be difficult to identify which learning associates are "non-managerial," and because adjudicating claims on the merits will result in hundreds of mini-trials.

Fierbaugh asserts without support that "Capital One's internal records can identify all *non-managerial* Learning Associates," FAC ¶ 52 (emphasis added), which she defines to mean individuals who "did not directly supervise two or more full-time employees," *id.* ¶ 41. But "a plaintiff may not simply point to a defendant's computer records and demand[] that it conjure up a class." *Spotswood v. Hertz Corp.*, No. 1:16-CV-1200-RDB, 2019 WL 498822, at *8 (D. Md. Feb. 7, 2019). To the extent Fierbaugh's proposed method of identifying which employees were "non-managerial" requires an individualized review of each employee's records (if, for example, Capital One's records do not readily identify how many employees a learning associate supervises, which may vary over time) this also renders the class unmanageable because a "plaintiff cannot merely identify a mass of data which could aid the process of identifying class members" but instead "must also provide an efficient method of using this information." *Id.* at *6.

Moreover, adjudicating the proposed claims would require discovery and mini-trials for hundreds of class members supporting different teams in different business units. The parties and the Court would then need to assess, among other things, each learning associate's job duties and the propriety of their classification, including whether any overtime exemption applied. That is not a feasible way for litigation to proceed, making the proposed class unmanageable.

**4. *Fail-Safe Class.*** A class of learning associates is also impermissibly "fail-safe" because membership "depends on whether the person has a valid claim." *Bigelow*, 2020 WL 5078770, at *4 (quoting *EQT Prod. Co.*, 764 F.3d at 360 n.9). In a misclassification case, a fail-safe class "define[s] the collective as those *misclassified* by Defendant," i.e., it contemplates only that employees whose duties do not meet an exemption may be class members. *Fillipo v. Anthem Cos.*, No. 1:22-CV-00926-JRS-MPB, 2022 WL 18024818, at *2 (S.D. Ind. Dec. 30, 2022) (cleaned up).

Fierbaugh has done exactly that by limiting her class to employees who primarily perform "non-exempt, task-oriented, clerical and administrative support." FAC ¶ 93. Under this definition, an employee who primarily performs "exempt" work is not included in the class, meaning their class membership "depends on whether the person has a valid claim." *Bigelow*, 2020 WL 5078770, at *4. Fierbaugh also defines the class to include only employees who "worked over forty (40) hours in any week," FAC ¶ 104—another fail-safe definition that warrants striking Fierbaugh's class claims. *See, e.g.*, *Cassie v. JB Sec.*, No. 1:17-CV-06587-DCF, 2018 WL 11449903, at *1 (S.D.N.Y. Nov. 16, 2018).[8] When considering this allegation along with Fierbaugh's claim that Capital One has not kept accurate hours records, FAC ¶ 70, the unmanageability of the proposed class, *see supra* I.B.3, is manifest: accepting Fierbaugh's allegations as true, determining class membership would demand an individualized assessment of whether potential class members worked more than 40 hours in any given week, without the benefit of hours records.

---

[8] "Beyond the unfairness their name suggests, fail-safe classes also raise manageability problems." 1 Newberg and Rubenstein on Class Actions § 3:6 (6th ed.); *see also Paulino v. Dollar Gen. Corp.*, No. 3:12-CV-75, 2014 WL 1875326, at *3 (N.D. W. Va. May 9, 2014); *infra* I.B.3.

## II.    THE COURT SHOULD DISMISS OR STRIKE FIERBAUGH'S FLSA COLLECTIVE ALLEGATIONS.

Just as Fierbaugh has failed to plead facts to satisfy Rule 23's commonality, predominance, and manageability requirements, Fierbaugh has failed to plead facts establishing that learning associates are similarly situated.  If "a complaint fails to sufficiently allege the attributes of the similarly situated employees, the collective action claim may be dismissed at the pleading stage." *Melendez*, 2020 WL 10140956, at \*2; *Harrington v. AZ Ice Gilbert LLC*, No. 2:23-CV-02529, 2024 WL 4651935, at \*3-4 (D. Ariz. Nov. 1, 2024) (collecting cases).

Here, Fierbaugh has not plausibly alleged that learning associates are similarly situated. She concedes that they worked across multiple seniority levels, supporting every division, department, and line of business nationwide which engages in training of its employees and work for different supervisors.  *See* FAC ¶¶ 38, 40, 56, 89.  And she offers only vague allegations of learning associates' job duties, many of which are copied *verbatim* from a separate lawsuit involving different Capital One jobs (process managers, content managers, and operations associates).  *See supra* I.B.2.

Courts have held that whether an employee qualifies for an overtime exemption "may vary, even if they have the same job title, if their job responsibilities and duties differ among each other." *Evancho v. Sanofi-Aventis U.S. Inc.*, No. 3:07-CV-2266, 2007 WL 4546100, at \*3 (D.N.J. Dec. 19, 2007).  Therefore, putative "collective action members . . . are not 'similarly situated' as to FLSA status when that status may differ depending on their job responsibilities and duties."  *Id.* Here, Fierbaugh alleges that learning associates perform vague and general duties, *see* FAC ¶¶ 20, 50, and fails to plead any particular "primary duty" that learning associates share.  Fierbaugh's conclusory allegations that Capital One cross-calibrates learning associates against one another, *id.* ¶ 89, do not, without more, show that these employees are similarly situated.  Fierbaugh

concedes that such cross-calibrations occur only "within each line of business." *Id.* ¶ 88. And the mere fact that cross-calibrations consider as "peers" those "employees with dissimilar job titles, but within the same 'job level,'" *id.* ¶ 90, does not mean learning associates are similarly situated. Fierbaugh thus cannot show that learning associates who support "every division, department, and 'line of business'" and work for different supervisors engaged in training are similarly situated. *Id.* ¶¶ 56, 89.

Finally, the putative collective suffers from the same fail-safe problem as the Rule 23 class: it includes individuals only if they "worked over forty (40) hours in any week." FAC ¶ 104. But that definition makes the collective improperly "conditional." *Bobb v. R & L Carriers Shared Servs., LLC*, No. 1:22-CV-2558-MLB, 2023 WL 10407064, at *1, *3 (N.D. Ga. Nov. 13, 2023) (denying FLSA certification because putative collective defined the collective as "'*if*' they were wrongfully denied overtime pay"). Fierbaugh's collective-action allegations thus also should be stricken.

## III.    THE COURT SHOULD DISMISS FIERBAUGH'S INDIVIDUAL CLAIMS UNDER RULE 12(B)(6).

Fierbaugh's individual claims should be dismissed because she has not pleaded sufficient facts to "nudge[]" her claims "from conceivable to plausible." *Twombly*, 550 U.S. at 570. "[P]laintiffs seeking to overcome a motion to dismiss" their overtime wage claims "must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017). While plaintiffs need not identify "a *particular* week" in which they were not paid overtime, they must "provide some factual context" to make the claim plausible by providing "sufficient detail about the length and frequency of their unpaid work." *Id.* A complaint that "recite[s] boilerplate elements of an overtime claim with no factual context" must be dismissed. *Aleman v. Kaiser Found. Health Plan*

*of Mid-Atl. States, Inc.*, No. 8:19-CV-00591-PX, 2019 WL 6717180, at *2 (D. Md. Dec. 9, 2019).

Here, Fierbaugh's allegations are limited to boilerplate claims that she "typically worked for Capital One for more than 50 hours each week." FAC ¶ 26. Although she alleges generally the hours she "***typically*** worked" on days she worked in the office or remotely, she does not allege how frequently she worked in either location or for what spans of time, *id.* ¶¶ 27-28 (emphasis added), nor does she allege how often or for how long she typically worked in the evenings or on weekends, *id.* ¶ 28. Fierbaugh's claim that "Capital One's work hours and expectations for Learning Associates was a 9-hour workday, Mondays through Fridays," *id.* ¶ 25, merely repackages her insufficient allegation of a typical workday—only with even less specificity. Fierbaugh does not plead facts to support this "expectation[]"—she fails to allege that such a policy was ever communicated to her by a supervisor or that she had any rational basis to believe it was the policy. *Cf. Alvarez v. Gov't Emps. Ins. Co.*, No. 24-CV-722-GLR, 2024 WL 4679399, at *6 (D. Md. Nov. 5, 2024).

These allegations are insufficient. *See Trotman v. AM Retail Grp., Inc.*, No. 4:20-CV-125-AWA-RJK, 2020 WL 9347968, at *3 (E.D. Va. Nov. 12, 2020) ("Stating that one worked over forty hours in a week and was not compensated for it is . . . 'so threadbare or speculative' that it fails to cross 'the line between conclusory and the factual'"); *id.* (alleging plaintiff "typically worked 12 hours, and sometimes up to 16 hours per day, six days per week" is "insufficient to state a plausible claim"); *Ramnarine v. Rainbow Child Dev. Ctr., Inc.*, No. 17-CV-2261-RWT, 2018 WL 1243546, at *3 (D. Md. Mar. 9, 2018) (claims alleging "Plaintiff and others . . . worked in excess of 40 hours per week," and attended uncompensated meetings dismissed as insufficient "because they provide no factual context" (cleaned up)).

Fierbaugh does not even estimate the overtime wages she is owed. "[A] plaintiff must at

least allege approximate wages such that the Defendants will be able to frame a meaningful response." *Alley v. Quality Eco Techs., LLC*, No. 3:20-CV-355-EWH, 2021 WL 1196188, at *8 (E.D. Va. Mar. 29, 2021) (cleaned up).  Because Fierbaugh has failed to do this, Capital One and the Court cannot "assess the plausibility" of Fierbaugh's wage claims.  *Id.*; *cf. Aguirre v. Joe Theismann's Rest.*, No. 1:19-CV-556-AJT-MSN, 2019 WL 12267459, at *4-5 (E.D. Va. July 23, 2019) (denying motion to dismiss where plaintiff alleged, *inter alia*, "the amount of overtime wages he believes he is owed ($130,923.02)," and "additional facts to assist his claim, such as the specific date range in which he alleges he was not paid for overtime, the fact that he was paid overtime in one paycheck during this range, the fact that he worked full-time throughout this time period, and the total number of weeks he worked full-time during this period"); *Macias v. Monterrey Concrete LLC*, No. 3:19-CV-830-REP, 2020 WL 5638710 (E.D. Va. Sept. 21, 2020) (concluding that plaintiffs sufficiently pled an FLSA overtime claim where they alleged:  (1) the number of hours they worked a week, (2) how they got paid, (3) when they were paid, (4) how much each of them were paid, (5) how many hours they were compensated for, (6) what the base level salary or hourly wage was, and (7) a description of the work done).

A careful review of Fierbaugh's allegations reveals she has failed to allege essential, required elements of an overtime claim, including when and how much she worked in excess of 40 hours, or even how much she was paid.  Fierbaugh's individual claims thus must be dismissed.

## IV.   THE COURT SHOULD STRIKE FIERBAUGH'S ALLEGATIONS SEEKING DAMAGES BEYOND THE TWO-YEAR STATUTE OF LIMITATIONS.

Under the FLSA, a two-year limitations period applies, except in the case of a willful violation.  29 U.S.C. § 255(a); *McNeil*, 2016 WL 11673834, at *2.  The same rule applies under Virginia law.  Va. Code § 40.1-29.2 (adopting the FLSA's "applicable limitations").  Fierbaugh has failed to plead any facts to support a claim that Capital One willfully violated the FLSA, and

thus the statute of limitations is two years, not three. "[A] plaintiff must allege facts at the pleadings stage that give rise to a plausible inference that a defendant willfully violated the FLSA for the three-year exception to apply." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021). This Court should adopt the rule announced in *Whiteside*: Fierbaugh's conclusory references to Capital One's supposed willful conduct are insufficient. FAC ¶¶ 77, 108, 128, 135. To be sure, without guidance from the Fourth Circuit, district courts in this Circuit have taken a more lenient view of this requirement at the motion to dismiss stage. *See, e.g.*, *Aguirre*, 2019 WL 12267459, at *5. But Fierbaugh cannot clear even that lower bar, as she has alleged *no* facts giving rise to a plausible inference that Capital One willfully violated the law.[9] Without any allegations whatsoever supporting willfulness by Capital One, Fierbaugh's claim to a three-year statute of limitations falls short of the pleading standard and should be stricken.

## CONCLUSION

For the foregoing reasons, the Court should dismiss and/or strike Fierbaugh's FAC.

---

[9] Indeed, where courts have found willful violations of the FLSA, employers ignored express warnings that they were out of compliance, tampered with records to thwart investigations, or even altered the allocations of hours worked between companies to conceal overtime work. *See, e.g.*, *Herman v. Palo Grp. Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir. 1999); *Martin v. Deiriggi*, 985 F.2d 129, 136 (4th Cir. 1992); *Cubias v. Casa Furniture & Bedding, LLC*, No. 1:06-CV-386-JCC, 2007 WL 150973, at *3 (E.D. Va. Jan. 16, 2007). Fierbaugh makes no such allegations here.

Dated:  March 25, 2025

*s/ Jason C. Schwartz*
Jason C. Schwartz, VA Bar No. 43635
Naima L. Farrell (*pro hac vice*)
Thomas J. McCormac IV (*pro hac vice*)
Alexandria C. Murphy (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036-4504
Telephone:  202.955.8500
Fax:  202.467.0539
jschwartz@gibsondunn.com
nfarrell@gibsondunn.com
tmccormac@gibsondunn.com
amurphy@gibsondunn.com

*Attorneys for Defendant Capital One Services, LLC*

Respectfully submitted,

Sean M. Gibbons, VA Bar No. 40981
ROTH JACKSON
1519 Summit Avenue, Suite 102
Richmond, VA 23230
Telephone:  804.441.8442
Fax:  804.441.8438
sgibbons@rothjackson.com

Genevieve C. Bradley, VA Bar No. 83325
Shannon R. Thielen, VA Bar No. 98932
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22102
Telephone:  703.485.3531
Fax:  703.485.3525
gbradley@rothjackson.com
sthielen@rothjackson.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this the 25th day of March, 2025, I electronically filed the above and foregoing document via the Court's CM/ECF system, which will send notification of said filing to all counsel of record.

*s/Jason C. Schwartz*
Jason C. Schwartz
